We'll be glad to hear counsel in our third case, number 12-1563, Francis v. Allstate Insurance Company. Good morning, your honors. May it please the court, Edward Brown on behalf of the appellants and plaintiffs, Danielle and Thomas Francis. This case involves the question of whether under arguably California law, but perhaps Maryland law, under any conceivable theory, to use the language from the California cases, did Allstate owe the two plaintiffs in this case a duty to defend against allegations of defamation, invasion of privacy, and some other torts. And there are two important things we'd like to note at the outset. First, there's a, not cop gas, but at least a catch-22 in the sense, once the lower court ruled that California law applied to the coverage issues and the declaratory judgment action, it effectively ruled that the plaintiffs could not recover the cost of prosecuting that declaratory judgment action. So under the Spiva case in California, unlike Maryland law, where the insureds, the plaintiffs in this case, who successfully prosecuted declaratory judgment action can obtain their attorney's fees, California law is quite absolute that the prevailing plaintiff insureds cannot. So it creates that issue where perhaps I should be arguing, agreeing with the judge that strictly California law should apply. Because once the judge ruled as a matter of law that California law governed, the claim for prosecuting the declaratory judgment action went out the window. I'm not so sure about that, Mr. Brown. It's a nice point you make, but it doesn't give me a headache to think that the special provision of Maryland declaratory judgment law could apply as a remedial statute, notwithstanding the application of substantive California law. But the statute doesn't apply. It doesn't provide that remedy. And that was respectfully one of the errors that we believe the lower court made. No, I understand that. It's the Maryland Court of Appeals interpretation of the declaratory judgment. And under Erie, Maryland procedural law would apply. But the procedural law is not—the substantive law is what allows the cost. The declaratory judgment statute never authorized the fees. The declaratory judgment statute authorized costs such as filing— I think we're agreeing with each other. Right. But there's no provision under the statute in Maryland law that allows that substance. Under the court's ruling, we'd have to look to California law to see whether the successful disclaimed insured could recover. And once that ruling was made, then ironically the costs were locked in at $66,000 to round off the figure, and the court never had jurisdiction. I'll come back to that issue because I want to focus, if permissible, on the substantive issue of the duty to defend. And I think another point that the lower court erred in failing to acknowledge, or at least failing to factor into its analysis, is there were two plaintiffs, two defendants in the tort suit. There was Thomas Francis, the son, but there was Daniel Francis, the mother. Daniel Francis did not have direct knowledge. You mind if I interrupt? I'm sorry. Certainly. You can hold that thought. One of the things that I found very curious, when you filed the state action pre-removal, it seems to me very clear that the jurisdictional amount was satisfied by a law—easily. Is that right or wrong? In other words, the tort case hadn't been resolved at that point. I believe that the—I'd have to check the timing, but I believe in our— It was filed on March the, what, 11th, something like that? It wasn't removed until April. But at the time of removal, when the case law says you look at the time of removal, the tort case had been dismissed and summary judgment had been entered, and final judgment had been entered as to all of the defendants. But that was—dehorsed the record of the federal claim. In other words, I don't want to consume your time with this, but it just strikes me as that the removal question is far more easily resolved, maybe not, than having to delve into Maryland declaratory judgment law. Well, from our point of view— Because you were seeking, clearly, more than $75,000 at the time you filed the state court action. Well, we didn't seek a specific amount. I understand that, but clearly you were. Well, clearly, had there been an indemnity judgment, we were keeping that option open. But the case law, I think, is crystal clear that you judged removal at the time of the removal. And at the time of the removal, summary judgment had been entered in favor of my clients and all the other defendants. Now, the argument was, well, maybe there was an appeal time. I'm sorry. I've got to ask you this hypothetical. Imagine a complaint in state court for $150,000 on a debt of some kind. A few days after the complaint is filed, but before it's served, the debtor defendant pays $100,000. Can that case be removed? No. If the amount of controversy is clearly not, in your example, $50,000— What if the check hasn't cleared? Well, I guess we can— You see, that's what I'm— But we judge by the date of removal, is what the case law says. So in that case, I think— What if the check hasn't cleared by the date of removal, even though the payment's been made? Anyway, I don't want to take— Well, I agree with you. But then we possibly move into those revelation cases. We talk about, is it something that could never happen, or is it something that had happened and it was revealed? Fair enough. But anyway, I'm sorry. I didn't mean to take up your time, but the question of jurisdiction is separate, obviously, from your claim. Yes, but obviously it's a very important question because if there's no jurisdiction, stop, do not pass, go, we need not reach the other issues. The other issues, I think, are substantively important and interesting in that, again, Daniel Francis, the mother, was only sued for assisting. It's just a vague claim of assisting. Clearly in the complaint, in appendix page 39, the allegation is that not only were these plaintiffs' acts intentional, but they also were alternatively, as allowed under the Maryland rules of pleading, negligent. And under the Tenants of California Tort Law—excuse me, Coverage Law, there's six basic tenets, which I've listed. But the most important are, first, that any conceivable possibility of coverage has to be resolved in favor of the plaintiffs. Second, similar to Maryland in the Cochran decision, you don't just focus on the pleadings. You actually look at matters extrinsic to the pleadings. And in that regard, it's important we don't just use labels. And respectfully, we believe the lower court viewed defamation as a quote-unquote intentional tort. But in Maryland, defamation can be negligent. It can be intentional. And in the Mercer case, Merced case in California, the court very clearly said, you don't just look to see if the statement was voluntary. The voluntariness is not the same. What you look for is deliberate and calculated. And I think that language actually came out of the Hogan case or the Wesson case, the Hogan v. Midland case. Deliberate and calculated conduct, that's a fact question. That's not a question that can be resolved by summary judgment. Here we had the plaintiffs below, Thomas and Francis, Danielle Francis, indicating that they did not deliberately try to defame the plaintiff in the tort suit. And it's very similar to the example used, I believe it was in the Merced case, of the speeding car. The person who was putting his foot on the gas pedal was deliberately trying to make that car go faster than the speed limit. Perhaps he was late for work or for court. But he wasn't deliberately trying to run down that pedestrian in the crosswalk. Here we did not have Thomas Francis, and we certainly did not have Danielle Francis, who again was only sued for assisting, not for saying something false with direct knowledge. We did not have them intentionally uttering false statements about the tort plaintiff. Rather what we had was a mother who asked her son who was moping to use what was going on. He said that Mrs. Towers had been performing acts of molestation or coming close to acts of molestation upon him. Like any mother, and in fact as required under the Maryland Family Code article, she goes to the school and complains. That is the sense of the person who is trying to get to the appointment in a hurry. She's not trying to damage Mr. Towers. She's not trying to defame his reputation. She doesn't even have knowledge of what really goes on. Perhaps she negligently trusted her son's statement. Perhaps she negligently overreacted and didn't do a good enough investigation of the facts. But what she did was not go to the Frederick Post and say Troy Towers is a child molester. What she did is she put in the wheels of motion that fortuitous chain of events was ultimately led to the school calling the police, the police going to the state's attorney, the state's attorney prosecuting. And she had to know those things would happen. I mean the school has an obligation to take some next steps. That's why she talked to them, I assume. Respectfully, the evidence and the only evidence was she just wanted her son to be protected. She wanted the school to take steps to protect her son. Had there been a deposition, had there been a discovery where Ms. Francis testified, yes, I deliberately understood or I knew that these wheels that are going to be put in motion ultimately would end up in a prosecution, we'd have a different case. There was no evidence of that. In fact, the only evidence the court had was her statement that the only thing she did was contact the school so the school could protect her son. Well, that goes to her motivation, right? Well, it goes to the deliberate and calculated intent to defame. Well, where's the California law that makes that distinction? That's the problem. It's a great argument. But there's a long line of California cases that refute that argument, that the motivation doesn't matter. If it's an intentional act, that's the end of the story. But we disagree. The Merced case is the one that says just because the act is voluntary, which I guess you can argue is a volitional act, is not the same as a deliberate and calculated act. And that's where we think the trial court respectfully erred and is grateful. The trial court actually recognized that Maryland tort law should govern the outcome of this case. But then it looked at all the California cases, which simply labeled defamation as intentional act, and particularly the Laporte case. We looked at the Vavasar case, which is a very similar case in that in California, trespass can be both negligent or intentional. In Maryland, trespass and defamation can be both negligent or intentional. And we believe that that case was more closely aligned to this case because in this case we have an actual pleading of negligent defamation, negligent invasion of privacy. And even California law in the ACS case agreed that there is an invasion of privacy that can be negligent. And that's the invasion of privacy we have here, the invasion of secrecy, not the invasion of seclusion. And I know we focus mostly on defamation. Remember, there were multiple counts. So even under the California law in that ACS case, this should have been covered. The distinction between negligent defamation and intentional defamation between the two states is huge. Defamation in California, which they listed out, has a different definition. They don't use the term negligent in their recognition of what constitutes defamation. In the Sinkoff case, Maryland clearly recognizes that defamation can be negligent. And what are the elements, what distinguishes Maryland negligent versus Maryland intentional defamation? You can have a negligent or reckless disregard of the truth. So, for example, if Daniel Thomas—excuse me, Daniel Francis knew that Thomas was a compulsive liar, and he comes one time and says the child molester at the school made me run around naked outside the school. Well, maybe she's going to have a little sniff test that a reasonable person wouldn't go running out to the Frederick Post and say or wouldn't go running to the school. If she does that, perhaps she's negligent. Perhaps she's reckless when she defamed or assisted in the defamation of Mr. Towers. You can be a defamer in Maryland, unfortunately, by simply not using reasonable care, by having reckless disregard, negligent disregard of the facts that would have led a prudent person not to republish or even publish the defamatory statement. And it appears that's what Mrs. Francis is being sued for. She has no firsthand knowledge. There is no intent by her to say something happened. All she is doing is negligently, at worst, repeating perhaps an incorrect statement by her son. And, again, the court below gave very little attention to the fact that there were two plaintiffs. The cases from across the nation seem to be in accord with the Bavasar case. Obviously, in Maryland, if Maryland law governs, and we suggest it should, the Sheets case is right on point, that because there is negligent defamation, the duty to defend arises. How do you win if California law applies? Because under California law, we still have the same rules. You look at matters extrinsic to the pleadings, and we look at whether the evidence proved that it was deliberate and calculated, as opposed to it was a voluntary statement, but one that was not intended to cause the damage, and one would put it to progress as fortuitous chain of events. And what's your best California case? Bavasar. So just like the negligent- Is there any other? We believe the other case, well, ACS on the invent of privacy, but on the defamation. Bavasar- Well, on the question of accident. We believe the Mercer case is probably our next best argument, because the Mercer case talks about the difference between voluntary conduct versus deliberate and calculated. But, again, deliberate and calculated, those are fact questions. And, similarly, the court relied heavily on the Eurek case, but if you look at the Steller case, Steller indicated that because the appellants in that case provided no evidence that this was an accident, this was not intended, so we think Steller actually helps us, because Steller talks about what happens by conclusion when the appellants actually do provide evidence. And in this case, we did. In this case, we absolutely provided statements which indicated that that negligence allegation in the complaint was probably the only real cause of accident they had, that perhaps we were forsaken, perhaps we put this chain of event without really knowledge, fortuitously to use the term, but perhaps we were that speeding person. But we weren't the person who intended to run down Troy Towers in a crosswalk. We were the person who accidentally, negligently, but perhaps recklessly, but all matters that don't fall to that deliberate, calculated, intentional level, that's what my clients did. And, again, Pouya from DC has the same holding as other cases that have the same holding. And, in fact, Allstate itself in that Louisiana case that we cited. Your light's on there, Mr. Brown. You did reserve some time. Yes, Your Honors. We'll reserve the rest, but I do want to just indicate, though, that with respect to the amount of controversy issue, again, Maggie Moo is the underlying case from this circuit, from that U.S. District Court from Maryland, which really I think is you can't use speculative arguments about what the fees may have been. At a minimum, there should have been a hearing. We may have well been willing, in fact, would have been willing to cap our fees so that we never got to the $75,000 point. And, again, at the time of removal, we were locked in at that $66,000 mark. Thank you, Your Honors. I'll reserve the rest. Thank you very much, Mr. Brown. Mr. Cox. Thank you. I plead the court, Ron Cox, on behalf of Allstate Insurance Company. There are several issues, but I'd like to just briefly talk about the jurisdictional issue. I don't think there's really any question that at the time their D.J. complaint was filed, they were looking for three different categories of damages. One of them was clearly to be indemnified for any judgment that would be registered against them, attorney's fees incurred in the declaratory judgment action, and attorney's fees to be incurred in the declaratory judgment action. All three of those should form part of the amount in controversy analysis. And if you consider all three of those things, I believe that it vastly exceeds the $75,000 limit. Do you argue that the mere judgment of a NISI price of a trial court doesn't change anything for jurisdictional purposes? In other words, between the filing of the complaint, the DEC judgment action, and your removal, the Circuit Court for Frederick County rendered a judgment in favor of the plaintiff's ear. Right. There could have been an appeal. Correct. There could have been a reversal. Correct. And that complaint asked for indemnity. Correct. So just because a judge found no dispute of material fact and granted judgment in favor of a defamation defendant doesn't mean the case is over, right? That's the position we took. That was our first argument, that the indemnification obligation still existed. In the tort suit, they were looking for $1 million in damages. Granted, the policy is only $100,000, so it makes the whole $100,000 policy at stake. That was the principal argument. You didn't even need to get to the attorney's fees issues, but the court obviously, the lower court did. By the way, there was no appeal, correct? There was no appeal. There was no appeal. But you didn't know that at the time that you removed the case. Correct. Okay. So with respect to the substantive issues, I don't think there really can be any dispute that California law applies. This was a California insurance policy. On the face of the policy, it says California. There is a choice of law provision in the policy that says the policy is being issued in accord with California law. The principal risk, which was an apartment, was located in California. The insured, Danielle Francis, was located in California. The policy was issued to her in California. The only remote connection with Maryland is the fact that the alleged tortious conduct occurred here. But for purposes of a contractual analysis, which the essence of the case is, the insurance policy, Maryland has no relationship whatsoever to it. And frankly, the plaintiffs really don't argue that it does when they try to argue that renvois applies. And renvois could only ever apply if California said, we don't care about our law. You, Maryland, can go ahead and apply yours. But they wouldn't do that. I mean, we cited a whole bunch of cases that stand for the proposition that had this suit been brought in California, California would have applied California law. So I don't think there's really any dispute about that. So the issue, I do want to address one thing that is raised in the reply brief that really wasn't raised before or below, as I understand it, which is this issue about Danielle Francis and separate claims being raised or being brought against her in the tort suit. After I saw that, I went back and I looked again at the tort suit. And interestingly, in the tort suit, she is sued only in a representative capacity. The tort suit is brought against, as the plaintiffs below acknowledge, or I guess the defendants below, that she was only sued in a representative capacity. The defendants, as defined in the tort suit, were the minors, not the parents. I mean, in the complaint itself, they say they refer to the defendants and then the parents and next friends of the defendants. They seek a judgment against the defendants, again, the minors. I assume the tort plaintiff's lawyer thought in Maryland that in order to sue a minor, you needed to sue them through their parents. So to claim that there was some separate duty that was owed to Danielle Francis is interesting now because in reality, there was never the potentiality of a judgment against her for what she did. What would have happened is, according to the complaint, the judgment would have been rendered against the son through her, if in fact that was the procedural mechanism, which the plaintiffs below challenged. But even clearer, as I pulled some of the court papers from that suit, is that after the amended complaint, which is the complaint that this court has, a second amended complaint was filed in that court, removing the names of the parents simply because the kids had attained the age of majority by then. And in one of the pleadings that the plaintiff filed in the tort suit... Well, I don't know that we should sit here quietly and let you go outside the record. Well, the only reason I did is because it was a reason to reply and I had to figure out whether or not it had merit. And so what the plaintiff acknowledged in a pleading was that the reason they filed two amended complaints was the defendants who were originally sued as minors through their parents and next friends, but who have since reached the age of majority and as such can now be sued in an individual capacity rather than a representative capacity. So in reality, there were no claims against Danielle Francis for anything they did. So this whole argument that somehow she assisted, if you could accidentally assist somebody, really is irrelevant. So the focus has to be on the claims against her son. The claims in the lawsuit, while there are a myriad of causes of action, the underlying complaint is that they made deliberate statements. And under California law, since 1940, from the Hogan decision on, California appellate courts have consistently said deliberate acts are not accidents. And while it is, and I suppose if I were on the other side, I would argue, too, that the word negligence appears in the tort complaint in California, it doesn't make any difference that the word negligence appears in the tort complaint because negligence doesn't equal accident. All negligence is is a legal theory, and that's fine. And while the plaintiffs try to draw a distinction between California and Maryland law on defamation, I don't see it because in both places you can be held liable for negligence because you either knew or should have known of the falsity of what you said. But that doesn't remove the fact that you have to have deliberately said it. And that's the basis of the complaint. They don't allege in the complaint, nor do the plaintiffs allege now, that they accidentally made these statements. I mean, how do you accidentally make a statement like this? You don't. And Judge Quarles below in his opinion actually, I think in a footnote, ended up finding a case where there was a negligent defamation, which California does in fact recognize, where the example was you might negligently defame somebody if a thief steals a letter that you wrote with defamatory statements. Maybe that would be negligent defamation. But that's because, you know, your many steps were moved. Here, the statements were made. They were made volitionally. They were made deliberately. There's no dispute about that. That's what the tort complaint says. In fact, that's what the plaintiffs acknowledge. What else are they going to say? That's true. And as you pointed out, in California, motivation doesn't make a difference with respect to accident. Intent doesn't make a difference with respect to accident. In Maryland, the analysis is different. I'm not convinced the conclusion would be different, but the analysis would be different. But in California, it's not. It's clearly an accident. It's not deliberate conduct. I believe that the plaintiffs said that their best case is Vavasour. And Vavasour is a federal district court opinion in California from 1992 that has been roundly criticized in California. The author of that opinion, and I believe that she wrote that opinion probably in May of 92, then in October or November of 92, she comes back. She is asked to visit a very, very similar scenario, and without saying that she was wrong, issues another decision that is clearly the opposite, which basically follows the whole line of California authority. And subsequent cases, when referring to Vavasour, say this. Nearly 20 years later, Vavasour has not been followed and is frequently criticized or distinguished by federal and California courts alike because Vavasour appears contrary to the clear weight of authority which holds that an insured subjective intent is not relevant when the insured acts intentionally. This court respectfully declines to follow Vavasour. I mean, every case that is considered Vavasour has said, this does not represent California law. So if that is their best case, the best case isn't particularly strong. The only other issue I believe exists with respect to what Judge... Well, actually, I don't think there are any issues that exist presently with respect to the issues that Judge Quarles actually addressed. Because he ruled in our favor on the accident issue, he didn't have to get to the issues of whether or not there was bodily injury and whether or not the exclusion applied. Because this court can obviously grant summary judgment or affirm it on any ground in the record, I'll just briefly address those two issues. Bodily injury is defined in all states' policy as physical harm to the body. That's not alleged in the complaint. At best, they allege medical expenses. That does not mean bodily injury. It doesn't mean physical harm. The evidence that the plaintiffs produce a year later, based upon a deposition of the tort plaintiff in February of 2010, which is about a year after, I understand, the plaintiffs got notice of that underlying suit, he was deposed and he was asked about physical problems. He did talk about impotency. He mentioned that some people might think he had a heart condition. Those allegations were never incorporated into the complaint, so they're irrelevant for purposes of the duty to defend. And there's no reason to believe that that's what they were referring to as medical expenses in the tort complaint, because when he was asked in the deposition, have you ever seen a doctor for either of those conditions, he said no. So there is no indication that the tort plaintiff ever believed that he had physical harm to the body, so there was no bodily injury. And lastly, the all states' exclusion applies in two conditions. One, where you have actually intended injury. We don't have to even get there. The second issue is if they reasonably expected injury from intentional acts. So it's an objective inquiry, and based upon all the evidence that's sort of related to the accident issue, there's no reason why anyone could not have foreseen whether the allegations were true or false, that there wouldn't be some injury. If they were false, he'd be injured. If they were true, he would be injured. So we believe that you could affirm summary judgment on any one of those three bases. So are there no questions? What's your best case? I think you agree with most of what Judge Quarles had to say below, except for the pot of money that should be included with respect to the amount of controversy question. And what's your best case for why the potential of an indemnity judgment should be included? I looked for cases where... Because it seems to me that at least for purposes of collateral estoppel under Maryland law, that a jury verdict by itself is sufficient for finality purposes, as I read the law. So that seems to be the best analogy. Why shouldn't that apply equally here? I look for cases where before removal, but after the complaint was filed, there was some dispositive motion in the underlying case. I couldn't find any. But my analysis is that what you do at the time of removal for purposes of determining the amount in controversy is to look prospectively at the potential pecuniary effect of the declaratory judgment. And if you're looking at the potential pecuniary effect, one of the potentials is if the appeal period hasn't run, that a tort plaintiff whose claim has been disposed of in summary judgment may in fact appeal it. And I don't think there's any dispute that you're looking at the potential pecuniary effect, but to answer your question, I couldn't find any case that was exactly on point. Okay. Thank you. Thank you very much, Mr. Cox. You have some time remaining, Mr. Brown. Thank you, Your Honor. With respect to that issue, the last question, the Maggie Moo Court, in citing many other cases, warned against the danger of using speculative evidence to try to predict an amount in controversy. And if we take it to its logical extreme, under Maryland rules of procedure, tomorrow Troy Towers could file a motion challenging that judgment on the grounds of fraud, mistake. I believe those can be filed at any time. Similar to our Rule 60 motion here, which would be a year. So are we supposed to believe that because an appeal could be filed or a motion to reconsider or a motion to set aside? If he filed that tomorrow, do we just live in a vacuum for five years or until he dies? It sort of goes back to the first appeal this morning. What is the maximum limit we have? I guess it's the demise of Mr. Towers. I don't wish any ill upon him, I'm saying. It's ridiculous. That is the definition of speculative events that could happen in the future. We know, as this court pointed out, there was no appeal. The enrolled judgment became a final judgment. We know what the lock-in sum at the time was, and that wasn't enough to trigger federal court jurisdiction. We know that the plaintiffs were willing to limit the amount that they were going to claim, and we know if California law applied, the court would have ruled we weren't entitled to that. Is the district court bound to accept that stipulation as to the limits of fees that you were willing to accept? I believe they are because that would be a certainty. If we put in writing, if I say the maximum amount I will ever charge is $5,000. Does the timing matter, the timing of the stipulation? I don't believe that's because we weren't at that point. But had we had a hearing, I believe we would have been at that point. If that was an issue, we would have readily conceded. We raised it in our pleadings. But we also had indicated that other grounds why we thought that that amount hadn't been triggered. At the time of removal, you had not stipulated to the attorney fees. Is that right? We had raised the likelihood that we would. We were under the belief that we were going to get a hearing, so there wasn't a written stipulation. There wasn't a set-in-stone stipulation as to that. Secondly, with respect to choice of law, I did want to point out the Shippers case. The Shippers case does indicate in California the validity, the execution of the contract, the black-and-white, concrete, nuts-and-bolts terms of whether a contract was made, that's governed by the place of contracting. So Maryland law would look back, and the policy had a clause in it that indicated it anticipated matters that would happen outside the state. The Shippers case, though, which is the California choice of law case, does indicate that with respect to the interpretation of the contract, that's governed by the place where the contract was to be performed. And in this case, in the modern age, all state was not under the impression that nobody would ever venture one foot outside of the state of California. And we know that by their own policy, which talks about acts that happen outside, occurrences that happen outside the jurisdiction. So from that point of view, we strongly believe that the Maryland-Renoir argument should apply. And because, again, this is not a pure contract action. In fact, it's not a contract action at all. This is an equitable action. This should have been decided by a court of equity going back to the days of chancellorship. So this is not a strict breach of contract action where we have to look at the place where the ink was put on the paper. That's why we actually argued you could make a rational argument that Illinois law should apply, because somebody put the computer stamp of the president of all state and deemed that to have happened in Chicago or, I guess, in Northbrook. That makes no more sense. For Maryland defamation action, we have eons of Maryland law, including the Sheets case, which is right on point, which says there's no doubt there would be coverage that Maryland law would apply. And respectfully, my opponent argues that there is no wiggle room between defamation versus accident. Well, if we look at Judge Quarles' own opinions, he, I think it was at appendix 195, just clearly says in California that defamation is an intentional tort, which is exactly what it's warned against, is that use of labels. The California case law is clear, because I heard numerous comments, when we look at the pleadings, we look at the pleadings. We start with the pleadings, but then we look at everything beyond the pleadings. So, for example, when Mr. Towers testified that he thought he might have high blood pressure, or he was informed, or that he had suffered impotence, we can look at those matters to address that issue, which the lower court did not address. But more importantly, we go to the very cases, and repeatedly in the appellee's brief, they said that intentional conduct equals deliberate and calculated conduct. There has been no evidence whatsoever in this case that there was deliberate and calculated conduct, particularly not when measured by the test of California courts, which comes from Vavasor, but cases since Vavasor have also adopted that standard of the no conceivable grounds. California coverage law says every benefit of the doubt must be given to the insured with respect to the duty to defend. Every conceivable argument, or if there is any conceivable grounds for which coverage can be applied, there must be a defense. Again, the indemnity can be decided later, but the defense must apply. For a court, without a hearing, without any evidence, to decide that what Thomas Francis and Danielle Francis, both of which were identified as plaintiffs in our motion below, and both of their acts were at issue, that what they did was deliberate and calculated as a matter of law with no evidence, with nothing but the pleadings against them, which is simply something our opponent phrased, and with evidence from at least the plaintiffs in this case themselves, that what they did was simply a mother's action to protect her son and her son's actions to stop being molested. Those are voluntary acts. We'll agree. Those are not deliberate, calculated, or intended to defame Mr. Towers, nor were they deliberate, calculated to invade his privacy. Those are simply acts to get the school to intervene and stop. What happened thereafter was outside my client's control. Whether you want to argue anybody should have foreseen that, that's a factual issue. This is as instinctive as somebody about to smack somebody's kid and you stop their hand. This is instinctive as we use maybe a poor analogy. I think somebody stealing somebody's kid, I say, stop thief. I'm not trying to destroy that person's reputation. I'm just trying to stop what's happening. Thank you, Your Honor. Mr. Brown, thank you very much, and thank counsel for your presentations. We will come down and greet counsel and take brief recess before our fourth and final case.
judges: Andre M. Davis, Albert Diaz, Stephanie D. Thacker